Cassa Marittima, Respondent, *v*. Phœnix Insurance Company, Appellant.

A maritime lien having once attached, cannot be divested, so as to avoid a policy of insurance thereon, without payment, release or some act on the part of the assured.

Plaintiff loaned to the master of a vessel a sum of money, upon pledge of the vessel and cargo. By the instrument creating the lien, the master agreed to pay the loan on arrival of the vessel at the port of destination, and assigned enough of the freight to cover it. In case of total loss the loan was not to be paid. On the back of the instrument was printed certain conditions, to which the loan was made subject; among them, one declaring that the owner or captain should not take any other advances upon the same freight at the port of loading, or in such case should hold themselves "bound to return the present loan, even though the vessel be lost." In an action upon a policy of insurance issued by defendant on the advances so made, it appeared that the master did take a further loan upon the freight at the port of loading, but without the knowledge, privity or consent of plaintiff or its agents. The vessel was lost after sailing from the port of loading by perils of the sea. *Held*, that the maritime character of plaintiff's loan and its insurable interest was not affected by the wrongful act of the master; and so, that it was no defense to the action; that the obligation of the master arising out of his act was collateral merely to the principal security, *i. e.*, the lien, and in no way affected its validity, or that of the insurance thereon.

Reported below, 59 Hun, 361.

(Argued December 2, 1891; decided January 20, 1892.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order

made January 21, 1891, which affirmed a judgment in favor
of plaintiff, entered upon a decision of the court on trial
without a jury.

This was an action upon a policy of marine insurance.

The facts, so far as material, are stated in the opinion.

*Edward P. Lyon* for appellant. The plaintiff had no
insurable interest in the draft. (1 Arn. on Mar. Ins. 10; 1.
Pars. on Mar. Ins. 208; 2 Pars. on Cont. [7th ed.] 636, 637 ;
*Meyer* v. *Isaac*, 6 M. & W. 612; *Cole* v. *White*, 26 Wend.
515; 2 Marsh on Ins. 633; *Stainbank* v. *Fenning*, 11 C. B.
88; *Stainbank* v. *Shephard*, 13 id. 418; *The Nelson*, 1
Hagg. 169; *The Atlas*, 2 id. 48–54; *The Emancipation*, 1
Wm. Rob. 121; *Jennings* v. *I. Co.*, 4 Binn. 244; Arnould
on Mar. Ins. 38–40; *Greeley* v. *Waterbone*, 19 Me. 9; *The
Hunter*, 1 Ware, 251; *Leland* v. *The Medora*, 2 W. & M.
92, 107; *Ruche* v. *Coryngham*, 2 Pet. 295, 303; *The Draco*,
2 Sumn. 157, 186, 188; *Bray* v. *Bates*, 9 Met. 237; *The
William and Emeline*, B. & H. 66; *The Atlantic*, 1 Newb.
Adm. 514; Jones on Pledges, § 176.) The second loan on
the freight at the port of loading was a breach of warranty,
or at least a material misrepresentation. (*The Gratitudine*, 3
Rob. Adm. 266; *The Nelson*, 1 Hagg. Adm. 169; *The Gaunt-
let*, 3 W. Rob. 82; *The Virgin*, 8 Pet. 552; 2 Pars. on Cont.
[7th ed.] 522; *Lewis* v. *E. Ins. Co.*, 10 Gray, 508.)

*Edward K. Jones* for respondent. The security against the
ship and freight, and, consequently, the marine risk continues
until the owners themselves not only agree to be bound, but
actually discharge the obligation. Additional personal security
is permitted in such cases, and the claim upon the *res* never-
theless continues until the personal obligation is discharged.
(1 Pars. on Mar. Ins. 213; *Stainbank* v. *Fenning*, 11 C. B.
84; *The Hunter*, 1 Ware, 251.) It is not necessary that a
contract shall be maritime in order to be insurable under the
law of this state. (Laws of 1849, chap. 308; *Force* v. *W. P.
Ins. Co.*, 35 Fed. Rep. 767.)

O'Brien, J.  The plaintiff recovered a sum, the equivalent of £400 English money, loaned by the plaintiff, through its agent at Pensacola, Florida, to the master of the ship *Buoni Amici* upon a pledge of the vessel and the freight she was expected to earn on a voyage, then about to be made, from Pensacola to South America, which was insured by the defendant. It appears that the plaintiff is a foreign corporation organized under the laws of the kingdom of Italy having its principal office at Naples, with branch offices in various other places including the city of New York. It was engaged in making maritime loans and insured with the defendant a maritime risk evidenced by the following paper:

"£400                    Pensacola, Fla., *August* 31, 1886.

"Fifteen days after arrival at the port of destination, River Plata or other intermediate port, at which shall end the voyage of my vessel denominated *Buoni Amici* I promise to pay to the order of the Cassa Marittima of Naples the sum of four hundred pounds sterling value received in cash as a loan on freight for the last expenses necessary to the undertaking of the voyage from Pensacola to River Plata and I hereby assign therefor, to the said Cassa Marittima, enough of the present freight to cover the sum of the above loan, with power to collect when due, and I hereby hypothecate ship and freight, for a payment of said loan with priority over every other credit, and in case of total loss, the amount received as loan shall not be paid back, and I accept all the conditions set down in the regulations of the Cassa Marittima relating to loans on freight of which I received a copy.

                    "B. QARTINO."

On the back of this instrument was printed the following: "The loans which the Cassa Marittima agrees to make on freight must be subject to the following rules." Here follow sixteen separate and distinct rules none of which need be referred to except the fifteenth which is as follows: "15th. The owner or captain shall not take any other advances upon the same freight at the port of loading or in such case

hold themselves bound to return the present loan even though the vessel be lost." It was admitted on the trial that the owner or captain did, without the knowledge, privity or consent of the plaintiff, unless such consent was given by the execution and delivery of the instrument above set forth subject to the rules and regulations indorsed thereon, take other advances amounting to $1,100 upon the same freight at the port of loading. On the 18th of September, 1886, the plaintiff's New York agent procured from the defendant upon payment of the required premium, a policy of insurance to said agent, on account of whom it may concern, for $2,000 whereby the defendant insured "lost or not lost, at and from Pensacola to Montevideo and (or) Buenos Ayres, on advances against captain's drafts upon the freight of all kinds of lawful goods and merchandize, laden or to be laden on board the good bark *Buoni Amici* whereof is master for the present voyage." The vessel sailed from her port of loading but was lost by perils of the sea and of course did not earn her freight which was pledged for the payment of the loan, and the plaintiff sought indemnity from the defendant under its policy. The defendant resists the claim on a single ground only, and that is that by force of rule fifteen, endorsed upon the draft, to the effect that if the owner or master of the vessel took other advances upon the same freight, at the port of loading, they should hold themselves bound to return the loan, even though the vessel be lost, and that as the master did take a further loan upon such freight at the port of loading, though it was without the knowledge, privity or consent of the plaintiff or its agents, this act of the master created a personal obligation and destroyed the maritime character of the plaintiff's loan, and its insurable interest, and thus defeated its right to recover on the policy. The defendant argues that a marine risk and not a personal obligation or promise is the subject of insurance. That when a loan is made upon pledge of the ship and freight a maritime lien is thereby created which is the subject of insurance, by the person in whose favor it is created. It is no doubt, true that it is an essential feature of such a loan that if the ship be

lost the loan is not to be repaid. What is strictly known as a maritime lien is created by making the advances, without any security for repayment except the chance that the ship will arrive safely at her port of destination, deliver her freight and thus earn the fund pledged to pay the loan. The defendant urges that the recovery cannot be upheld unless at the time of the loss of the ship the plaintiff had an insurable interest that is to say a maritime lien, and that the act of the master in taking subsequent advances created a personal obligation and destroyed the maritime character of the risk. The vessel was an Italian craft and it is found by the trial court that under the clauses in the policy authorizing and requiring the plaintiff to sue and labor, with respect to the property so insured, the plaintiff brought suit against the owner of the vessel in the courts of Italy, upon the draft made by the master above set forth, but was defeated in such action. It was further found that the plaintiff has not made any attempt or taken any proceedings to collect the loan from the master for the reason that since the loss under the policy, he was insolvent and nothing could be collected from him by execution. If the instrument is read without reference to the printed rule endorsed thereon it is admitted that it is evidence of a loan made by the plaintiff upon the security of a maritime lien. It expresses upon its face, what the law would imply from the nature of the transaction, that the loan was subject to the perils of the sea and contingent upon the arrival of the ship at her port of destination as it is expressly stipulated that, in case of total loss, the amount received as a loan shall not be paid back. So far the transaction vested an interest in the plaintiff in the freight and ship that was the subject of insurance. But it is contended in behalf of the defendant that the printed rule on the back of the instrument followed by the act of the master in taking further advances has changed all this and has left the plaintiff with nothing but a piece of commercial paper as security for the loan which was not such an interest as could be insured.

To this point the plaintiff's counsel answers, first, that under the statute of this state providing for the incorporation of

marine insurance companies (Ch. 308, Laws 1849), under which statute the defendant was created and exists as a corporation, authority is given "To make insurance upon vessels, freight, goods, wares, merchandize, specie, bullion, jewels, profits, commissions, bank notes, bills of exchange, and other evidence of debt, bottomry and respondentia interests, and to make all and every insurance appertaining to or connected with marine risks and risks of transportation and navigation," and that, therefore, the defendant is liable upon its policy in this case, whether the plaintiff had, at the time of the loss, a maritime lien or not.  But secondly, the plaintiff contends that, under certain circumstances, a maritime lien and a personal obligation may exist together as security for the same loan, and the defendant's counsel, within certain limitations, does not dispute this.  The proposition, however, in his view is limited to cases where the personal obligation of the owner or master is collateral merely, and where the additional personal obligation conforms to the maritime lien itself, that is to say, is of no avail to the lender if the ship be lost.  In other words, if the personal obligation shares the fate of the lien itself, and falls with it by the loss of the ship, then the maritime character of the loan remains intact, and the maritime interest in the freight, or subject hypothecated, remains undisturbed.  The application of this principle to the facts of this case is the point of difference between the parties.  Both rely upon substantially the same cases and authorities to establish positions radically antagonistic with reference to the rule of law.  (Parsons on Marine Insurance, vol. 1, pp. 208, 213, 223; *The Hunter*, 1 Ware, 251; *Stainback* v. *Fenning*, 11 C. B. 51; *Stainback* v. *Shepard*, 13 id. 418; *Cole* v. *White*, 26 Wend. 515; *Bray* v. *Bates*, 9 Met. 250.)

It is not claimed that the master, by taking subsequent advances at the port of loading on the same freight, created, by force of the rule referred to and printed on the back of the instrument, any personal obligation as against the owner of the vessel with reference to the loan in question.  The plaintiff attempted to enforce such an obligation in the courts of the

country where the owner resided and where the ship belonged, and failed. What is urged is that the master, by his act in taking the subsequent advances, succeeded in creating a personal obligation against himself, and that was enough to destroy the maritime character of the loan. The defendant does not claim that the mere taking of a personal obligation, or of additional security, destroyed the maritime character of the draft. On the contrary, he admits that there is abundant authority for the position that a personal obligation or additional security may be taken and held and at the same time the maritime lien preserved. He attempts to distinguish this from the reported cases where such personal obligations were held not to affect the maritime character of the loan by the circumstance, as he claims, that the master at least was bound personally, though the ship was lost. Some of the cases in the books turn upon the question whether maritime interest could be collected by the lender. In this case that question does not seem to be involved at all, as it does not appear what interest was exacted, and no question of that character is raised by the pleadings, or otherwise. In the cases to which our attention has been called, the bottomry bond and the personal obligation were parts of the same transaction, and given by the parties as security for the same loan. In such cases it is reasonable enough to hold that a personal obligation, intended to survive the loss of the ship, destroys the maritime lien, but this case in its facts differs widely from those where it has been held that the personal obligation destroys the lien. Here the plaintiff made a loan which by force of maritime law, as well as by the terms of the instrument taken from the master, became à lien upon ship and freight. This lien gave to the plaintiff a special property in the ship and freight which it is admitted is a proper subject of insurance. It is true that it was stipulated that in case the master displaced this lien by taking other advances on the same freight at the port of loading, then by that wrongful act a personal obligation was to spring up against him for the amount of the loan. But none of the parties intended that if such an obligation was

ever incurred by the master by reason of an act on his part which was thought merely possible that it should have the effect of destroying and divesting the interest or special property which vested in the plaintiff after the making of the loan, and the execution and delivery of the instrument by the master and upon the faith of which the plaintiff made the advances.   The additional promise that was to arise out of the master's act was contingent upon a future event and collateral merely to the principal security, that is to say, the lien.   The lien having once attached could not be divested so as to avoid a policy thereon without payment or release or some act on the part of the plaintiff. Granting that when the master took the subsequent advance an obligation came into existence against him to pay the plaintiff's loan that would not disturb the contract relations created between the plaintiff and defendant by the instrument which the master executed and the policy of insurance.   The new and additional obligation of the master might come into existence and could stand as against him should the plaintiff elect to so treat it, but how could that destroy a prior security when the plaintiff did not intend to substitute it for the lien, and in fact had no knowledge of its existence because it had no knowledge of the act of the master in taking the further advances out of which act the promise on his part was to arise, if at all?   The wrongful act of the master was without the knowledge, consent, privity or procurement of the plaintiff, but if, notwithstanding that, a promise to pay the loan on the part of the master arose from the act, such a promise could not, without the plaintiff's consent, destroy and take the place of an existing maritime lien.   The promise of the master, if it ever came into existence against him, might stand as collateral to the lien on the freight and ship, but cannot affect the validity of the maritime lien unless the master paid plaintiff's loan, in which case the lien, of course, would be discharged. Whatever construction may be given to the printed rule on the back of the draft, it is clear, we think, that the parties to the transaction never intended, when the loan was made, that the subsequent wrongful act of the master in taking another

loan should have the effect of releasing the ship and freight·as security for the payment of the plaintiff's advances, and a maritime contract, like all other contracts, should be construed according to what appears to be the intention of the parties, and not in such a way as to accomplish a result not within the intention of any of the parties. To hold upon the facts as they appear in this case that the mere act of the master in taking other advances divested the plaintiff's lien and avoided the insurance thereon would be to attach consequences to the printed rule on the back of the instrument that the parties never contemplated and to work injustice. To hold that the personal liability of the master, if any, growing out of his act in taking other advances, may stand without destroying the lien and having no effect upon it, unless paid, would be just and is not, we think, contrary to authority.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.